Our next case of the morning is 414-0469, People of the State of Illinois v. Pettis for the appellant, Mr. Matthew, and for the athlete, Mr. Zimmerman. You may proceed. May it please the Court? Counsel? I am Assistant Appellate Defender Akshay Matthew, and I represent Mr. D. Jermaine Pettis in this appeal. On August 5, 2013, two officers from the Champaign Police Department unconstitutionally searched and seized my client, Mr. Pettis, in violation of his Fourth Amendment rights. Now, the trial court denied Mr. Pettis his motion to suppress evidence obtained from this illegal search. We therefore request that this Court reverse the lower court's determination and remand this case for a new trial. I'd like to begin my argument by first talking about the issue of consent. Following that, I will address three important moments during the traffic stop where Mr. Pettis was unlawfully detained or searched. The first would be the initial stop, where Mr. Pettis was detained beyond the scope of a valid carry stop. Second, after the first search, where the officers did not have probable cause to detain and to search Mr. Pettis. Third, after the second search, where officers did not have probable cause to arrest Mr. Pettis. Now, beginning with the issue of consent, Mr. Pettis consented to the first search, and officers subsequently searched him two more times. They did not get additional consent for the second or third search. Consent for a first search does not extend to a second or third search, except in very limited circumstances. An example of that would be in Manakowski out of the 5th District. In that case, officers got consent for a first search, but during the search it started raining, so they had to cut short the first search. After that, the officers took him to somewhere where there was cover from the rain and continued that search. So there was two searches, but that was considered allowable because the first search was never complete. In this case, that does not exist. The officers completed the first search, a first full search. They did, again, a second full search, and after that, another third search. This is beyond the scope of what would be reasonable with regards to consent. Second, the officer Aikman bladed his hand and placed it in between Mr. Pettis' buttocks. This search is beyond what an individual would consider reasonable when they consent to a search. Therefore, Mr. Pettis' search was beyond the scope of his consent. Counsel, how does the fact that the officers were receiving additional information play into this? And by that, I'm talking about the other passengers who indicated that he was going to place something in his buttocks and whether or not the dog would be able to detect it. How does that play into the progression of things here? That additional information, that didn't give the officers a basis to extend the police contact and also to search him more than once? With regards to consent or with regards to... I think that would be probable cause, not consent. To begin with, after the first search, the two other occupants did make statements. However, those statements, first of all, do not have the reliability under Gates. So, it's questionable where that establishes probable cause. For example, if you look at the totality of the circumstances involving those statements, the police have no measure as to Mr. Johnson's reliability. They've never dealt with them before, so they can't speak to their accuracy. The Johnsons also have an incentive to lie. Mr. Johnson was the driver and he was implicated in the canine alert and Ms. Johnson was the owner of the vehicle. On the other hand, Mr. Pettis had no criminal history and there was no warrants for his arrest. What about their statements combined with the fact that the dog alerted? After the dog alerted, they performed a first search. So, if there was probable cause up until that point, it had dissipated when officers searched Mr. Pettis and found no contraband, no drugs, no weapon. So, this is much like Rodriguez where after the traffic stop as to him was completed, he should have been free to go. Same way, Mr. Pettis, after the search revealed no contraband or anything else on his person, that probable cause dissipated. So, we are left with this additional statement which do not have the reliability to establish probable cause for a second search. I guess I don't understand. Tell me more about the reliability. There is a hit on the car and the driver and the passenger point the finger at somebody else. And they do so with a degree of specificity, i.e. suggesting where the hiding place is. There is a motive to lie, but there is also a motive to tell the truth. Because they don't want to be detained further, they don't want the car torn apart and nothing found, which my understanding is the police don't put it back to the other police. Why isn't that? I mean, if an officer is out on the street, why wouldn't he think that way? I mean, in terms of, this person is more likely to be reliable than a guy in the front seat who's stoned and he's a mope. You know, maybe I'm not going to pay any attention to what he says. Yes, Your Honor. That was a long question, but tell me about it. The statements made by the Johnsons also did not indicate that drugs were involved. They said that he had placed something in his pants and that he asked if the dog smelled it. But isn't there a reasonable inference that if he's worried about the dog smelling it, sniffing it, isn't there a reasonable inference that it's going to smell like something the dog is trained to detect, i.e. drugs? It could be made an inference. But even in cases out of the first and the third where a defendant furtively places something either in his pocket or in his mouth, there was examples of the, like a controlled by being, or the defendant buying something and placing it furtively in his mouth. And the first and the third district have both held that that does not establish probable cause. This is similar. First of all, the occupants don't say it's drugs and he places it furtively in his pants. That alone should not establish probable cause. And going back to the reliability, going back to the canine alert, probable cause must be particularized to a suspect. In this case, the car was generally alerted to. This court held in Fondia that a generalized canine alert does not provide probable cause to search a passenger in the vehicle without additional indicia of suspicion. And the Supreme Court has held similarly in DeRay. So that alone would not have established probable cause. And subsequent to that first search, or after that the canine alerted, they searched Mr. Pettis and they found no contraband and no drugs. Now, even if there was probable cause at this point, officers performed a second search and they again found no contraband, no drugs, and no weapons. This is the second time that they were not able to find any contraband on Mr. Pettis. And following the second search, Mr. Pettis was de facto arrested by the two officers when his freedom of movement was restricted by handcuffs. Now, handcuffs do not always equal an arrest, but in this case there was no indication that Mr. Pettis was harmed or that he was dangerous by the officer's own statement. In fact, the officers testified he was allowed to stand in front of the car, but based on the record it seems unattended after the first search. So there was no issue of safety involved here. He was de facto arrested without any probable cause, and therefore the arrest was unlawful and any subsequent evidence that was found should have been excluded. Additionally, following the third search, the officers did find paraphernalia that was in the vehicle. However, this paraphernalia was not particularized to Mr. Pettis. First of all, he wasn't the owner of the vehicle or the driver. And the paraphernalia, based on the record, wasn't in plain view because it required the officers to search the car before they even found it. Additionally, they found paraphernalia in the trunk of the car, which Mr. Pettis would not have access to being an occupant of the vehicle. And they also found paraphernalia in Ms. Johnson's coat. So, most of that evidence was not particularized to Mr. Pettis. And based on what's known to the police at the time, if you look at the totality of the circumstances, you have a canine alert that alerted to the driver and the owner of the vehicle. And when you say that, I thought it was just as to the vehicle. I didn't think it was specific to a person. Yes, but I'm saying that the connection to Mr. Pettis was very sparse with related to the vehicle. He was not the owner, nor was he driving the vehicle. And two searches showed that he was carrying no contraband on his person. Now, we can look at it in the end that officers eventually did find drugs on Mr. Pettis' person because it's based on what officers knew at that time. And at that time, there was no particularized probable cause as to Mr. Pettis. All that probable cause would have dissipated following the first search and the second search. Now, the argument regarding the de facto arrest, was that made at the trial court level? I believe it was, but I can't remember for certain. I'm sorry, Your Honor. But it's clearly he was handcuffed and they had no indication that he was dangerous. And the case law is pretty certain that in that scenario, it's generally they're restrained by physical force and a show of authority. So this encounter was fraught with improperness and illegal searches and detention. And any of these instances would have been enough to establish a Fourth Amendment violation. Here we have three different instances where this occurred. The police did not have probable cause to detain or to arrest Mr. Pettis. This was in violation of Mr. Pettis' Fourth Amendment rights. Officers cannot indefinitely just search or detain a suspect. Without probable cause. Therefore, we request that this court reverse the trial court's denial of Mr. Pettis' motion to suppress and remand his case for a new trial. We'll refer you to me on rebuttal. Counsel? Third time's the charm. One second, Your Honors. There's a thing... May it please the court. Counsel. Good morning, Your Honors. My name is John Zimmerman. I'm from the Fourth District Appellate Prosecutor's Office. On behalf of the state. What we have in this case is an excellent example of proper police conduct when there's probable cause to believe that there's drugs located in the vehicle or on an individual within that vehicle. Throughout this entire scenario, the officers conducted a reasonably calculated step-by-step search. This was in a fashion to reveal potential contraband in the least invasive way possible. Officers acted in a way to ensure and protect their safety, the individuals in the car's safety, as well as their constitutional rights. As a result of this, the state contends that the denial of the motion to dismiss from defendant, or the motion to suppress from defendant, was properly denied. More specifically, the officers' search of defendant was lawful as it was supported by probable cause, and the officers' detainment of defendant while conducting their search was lawful as well. The state would like... Did you hear my flip it comment? No, I did not, Your Honor. Third time's the charm. Is this my third time in front of you, Your Honor? No. The third search. Oh, the third search. Would you like me to focus on that search? I would. Okay. I will focus on the third search. One second. Okay. So just to slightly review quickly, the car was lawfully stopped, the defendant was initially searched, that was consentful, consented to... Well, what's the timeline for the additional information? What additional information? That the police acquired from the passenger and the driver. Okay. So, after the officers removed the defendant and instructed him to step in front of the car, they then went to remove the front driver and the front passenger. As they were removing those two individuals, they stated to the officer that the defendant had his hand up his rear and that the defendant asked, will the dog be able to sniff it? The dog's already on the scene at that point. Correct. There's not much of an issue of whether the dog unlawfully prolonged the traffic stop. I mean, the dog alerts on the car. Correct. Okay. Would you just... Well, let me just begin with the initial stop. I'll try to make it quick. So in the initial stop, the vehicle was lawfully stopped with suspended plates. The officer received information about the individuals. They ran that information. The driver had a license that was revoked and had a recent drug charge. They then radioed the K-9 unit. This was as they were preparing the citations. They also found there were no warrants or criminal history for the defendant. The K-9 came to the scene, alerted to the presence of drugs, while the officers were still writing citations. And at the least, the traffic stop was not completed for the purpose of the traffic stop. So there's no constitutional issue regarding the prolonging of the stop. Following this, the officers began to search the car. To do this, they were removing the individuals from the vehicle. They removed the defendant first. Can we pat you down to search for a weapon? Sure. Why don't you just search everything? So they searched him. Didn't find anything. They continued their search. What did they do next? They removed and searched the driver and the front passenger. This is when those statements about the drugs being in his buttocks come up. The state argues this along with the dog hit and this testimony provides probable cause to continue to search the defendant. As counsel stated, they searched him again. They didn't find anything. And worse, as I previously stated, they're doing this in a method that is reasonably calculated and as non-invasive as they need to be. They don't want to just strip search the individuals they don't want to, or if they don't need to. So following this, they go into the car. And all the information up to this point, the dog hit, the testimony from the other passengers, it just keeps heightening the probable cause because they find contraband in the car. It's also near where the defendant was seated. This further evidence... Are you talking about the statements of the passengers? You said testimony. Oh, I apologize. Statements. And so the statements from the passengers as well as finding the drugs just further shows the officers maybe he really does have drugs in his buttocks. So what did they do next? They lowered the defendant's jeans, which revealed athletic shorts. It was not really a strip search because he had two pairs of clothes underneath that were not boxers or underwear. The officer then bladed his hand down the buttocks, felt the knot of a baggie, tucked on it, and it fell down and it turned out to be heroin. As a result of all this evidence, the dog alert, the statements, and just the reasonably calculated step-by-step approach trying to be the least invasive as possible shows that there was probable cause to search the defendant until they found the drugs that they were looking for. So in the timeline between the second search and the third search, is that when the paraphernalia was found? Yes, that is correct. And throughout this time, the counsel brought up the issue about the de facto arrest, and there was some conflicting testimony from the officers. The trial has to win. The defendant was handcuffed, but I believe he was the ultimate finding of fact by the trial court was that he was handcuffed after the statements from the individuals in the car, which, as the state has argued, that provided probable cause, and probable cause is probable cause. So then they handcuffed him, and following that, then they found the evidence in the car, then they found the heroin in his buttocks, and that was plenty of probable cause in order to arrest the defendant. So with all of this being said, the officer's search of the defendant was lawful, as it was supported by probable cause. The officers lawfully detained the defendant while conducting their search, which ultimately properly arrested him, and the state requests this court to affirm the judgment of the lower court. There is no further questions. Did the consent extend of the second search? The state did argue that in their brief as an alternative argument, but one other issue that the state did not get to address in this argument was the case law behind this. Council did cite previous Fourth District presidents, which is Fondia and Staley. They are a 2000 and 2002 case. This court held in Fondia 2000 that a drug sniffing dog's alert to a vehicle does not justify a search on the occupants of the vehicle. Rather, those persons must be sniffed individually before they may be searched. Two years later, this court held, however, a dog's alert to the vehicle standing alone will justify searching the occupants when there is evidence that having the dog sniff the occupants individually would raise valid safety concerns. There was a concern concurrence there by Justice Cook that stated the holding in that case, and Staley ultimately states that a canine sniff on an individual is not feasible because of the danger to the individual if the dog should alert to that individual. So ultimately what I'm trying to say here is that the presence of drugs detected in a lawfully stocked vehicle through dog sniff rather than human olfaction should supply probable cause to conduct a warrantless search of the passengers, not just the driver. That's what the Second District held in 2011 Newberger, and they also did distinctly address this Fourth District president in Fondia and Staley and distinguished those cases, and the state requests this court to adopt that reasoning in Newberger because it is quite reasonable and logical. And the idea is that it might be better to have an individual sniff, but that's bad policy and there's danger and there's risk. Correct. So we're going to forget about that and go back to the idea that if there's a hit on the car, it's okay to search the passenger. Yes, Your Honors. And the state found it perplexing that a canine unit that is much more adept at being able to sniff drugs was not allowed previously to provide probable cause for all the passengers, whereas an officer who could smell cannabis was enough. So the state is asking that a canine sniff that gets a hit is enough probable cause to search all the occupants of the vehicle. And if there's no further questions, thank you for your time. Rebuttal. First plea, Your Honor. To start with counsel's talking about Fondia, there were cases decided after Fondia, mainly Staley, Neuberger, and Williams, which counsel cited in this brief. The difference between Fondia and those other cases is that there was some suspicion before, or including the drug sniff. I believe it was in Staley that the defendant was running from a known drug house to the car. So there was suspicion there. There were other additional indicia of suspicion. The only thing that Staley and Neuberger opposed is that they did not require a drug dog to individually sniff. Again, in this case, a drug dog initially sniffing Mr. Pettis, individually sniffing Mr. Pettis is not the issue. It's that there was no other indicia of suspicion as to him. And all those four cases, they agree with that proposition. But what about the statements of the passengers and the paraphernalia? That happened after the first search. I'm speaking just with regards to probable cause. But the first search was consensual, right? To detain him following that first search before the statements came in. So there was a period of time where the search was, the tarry stop was extended to him. So, actually two periods of time. First is when the officers approached the vehicle and told the occupants that they were going to perform a canine sniff. Now, at that point, the traffic stop was already complete as to Mr. Pettis. There was no reason to further detain him. And they were in a parking lot, so they could have allowed him to go free, because they had already determined at that point that the driver would be arrested, and they also determined that the car would be towed. So Mr. Pettis could not have left with the vehicle. So after the officers notified them, there was a brief period of time where Mr. Pettis should not have been further detained. And then, again, following the first search, they found no contraband. So there was, again, a brief period of time before the statements of the occupants came in that Mr. Pettis should have been let go. And... counsel also stated that this was a non-invasive search. There's nothing non-invasive about having a hand placed in between a person's buttocks. It's not reasonable to think that any person would want that. And... lastly, counsel says that police were taking a calculated, reasonable approach to the search. And he also said earlier that safety was a concern. Now, the Supreme Court in Rodriguez stated the following. Traffic stops are especially fraught with danger to police officers, so an officer may need to take negligibly burdensome precautions in order to complete his mission safely. So safety is a concern. On-scene investigations and other crimes, however, detours from that mission. And that's exactly what happened here. The officers were determined to find drugs, however it may be, and that detoured from the mission of the original stop. The officers had Mr. Pettis' information. They had his driver's license address and his birth date and his name. They could have found him if it required. The officers were going to tow the car. They would perform an inventory search. So if there was any suspicion as to Mr. Pettis, they could have gotten a hold of him. And... but the officers here were determined to find something. And that's not what a traffic stop is supposed to be. It's supposed to be quick and safe to the officers. And if there is no probable cause, they should not continue to detain someone. If there aren't any further questions... Thank you. We'll take this matter under advisement. Recess for lunch.